**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHILIP and RENEE WEISBECKER,<br><br>*Plaintiffs*,<br><br>v.<br><br>JANET SZALKOWSKI, et. al.,<br><br>*Defendants*. | Civil Action No.: 14-cv-55 (PGS)(DEA)<br><br><br><br>**MEMORANDUM<br>AND<br>ORDER** |

**SHERIDAN, District Judge.**

**Facts and Procedural History:**

By way of cross motions for summary judgment, Plaintiffs and Defendants seek a determination of whether flood coverage pursuant to the National Flood Insurance Program ("NFIP") is available in this Superstorm Sandy case. Plaintiffs Philip and Renee Weisbecker ("Plaintiffs") have owned property in Toms River, New Jersey since August 25, 2007. On October 29, 2012, Superstorm Sandy caused tidal water storm surges to flow onto the Property. During the flooding, water entered into an abandoned underground oil tank. Plaintiffs had been unaware of the existence of this tank. As a result, residual fuel oil was forced from the tank and seeped into the sandy soil crawlspace areas of the property. To remedy the damage, environmental remediation measures were undertaken, including removing and cleaning contaminated sand. (Plaintiffs' Summary Judgment Brief ("Pls' Brief"), at 3). Plaintiffs did not

submit an official proof of loss for the supplemental damage claim prior to filing suit. (See Defendants' Statement of Uncontested Material Facts ("Defs' SMF") at ¶ 9).

Plaintiffs are holders of a Standard Flood Insurance Policy ("SFIP") Dwelling Form issued by Allstate Insurance Company ("Allstate"), a Write-Your-Own Program carrier participating in the NFIP. (See Defs' SMF at ¶ 1). The SFIP is at issue in this case (the "Policy"), which sets forth terms that have been approved by the U.S. government pursuant to regulations. See 44 C.F.R. Pt. 61, App. A(1).

Plaintiffs allege that Allstate has "refused to provide coverage for the oil spill" under the Policy and has "refused to pay any of the costs of the clean-up necessary for rehabilitation of the plaintiffs' property." (Pls.' Brief, at 3). Plaintiffs submitted a claim for flood damage, and on or about January 3, 2013, Allstate issued an initial payment for other claims in the amount of $70,967.76. (Id., at 4). Immediately thereafter, Plaintiffs submitted a supplemental claim because the adjuster did not account for the damage caused by the oil tank and requested payment for removal of the tank and oil and other clean-up. (Id). On January 17, 2013, Allstate claimed that the oil tank was not covered by the policy. (Id.). Plaintiffs seek a declaration that the oil-spill related damage is covered by the SFIP. (Id.).

At oral argument held on March 7, 2016, the Court requested supplemental briefing for Plaintiffs to clarify what they were seeking. In their supplemental brief, Plaintiffs seek payment for the following items:

1. Testing of the interior soil, as required by local law, found within the confines of the house, i.e.: the crawlspace and area contained within the foundation that is filled with sand;
2. The removal of oil-contaminated sand and replacement with clean sand;
3. The installation of rat slab to prevent further intrusion of oil vapors from the sand; and
4. The complete removal of the oil-soaked joists, as opposed to the original approved method of merely cleaning the oil off the joists.

2

Defendants responded in mid-April 2016. [ECF No. 44].

**Legal Standard**:

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48.

Courts interpret flood insurance policies by giving them their plain, unambiguous meaning, with ambiguities decided in favor of the insured. *Linder & Assoc., Inc. v. Aetna Cas. & Sur. Co.*, 166 F.3d 547, 550 (3d Cir. 1999). "Because any claim paid by a WYO Company is a

3

direct charge to the United States Treasury, strict adherence to the conditions precedent to payment is required." *Suopys v. Omaha Property & Cas.*, 404 F.3d 805, 809 (3d Cir. 2005).

**Analysis**:

As a threshold matter, Defendants claim that Plaintiffs did not submit a formal proof of loss for the supplemental oil spill claim. Article VII(R) of the SFIP states that a claimant "may not sue us to recover money under this policy unless you have complied with all the requirements of the policy." In a proof of loss, the insured informs the insurer of the amounts they are claiming under the policy. See SFIP, VII(J)(4). The insured must sign and swear to the statement and provide nine pieces of information to the insurer, including specifications of the damage, repair estimates, and an inventory of damaged personal property. See SFIP, VII(J)(4)(a)-(i). Policyholders are presumed to know and understand this requirement. *See Sutor v. Federal Emergency Management Agency*, 2009 WL 4268457, at *4 (E.D. Pa. Nov. 23, 2009). Furthermore, "there is substantial authority for the proposition that policyholders must file proofs of loss in support of all claims, including supplemental or additional claims, and that failure to do so warrants summary judgment against the policyholder." *Sutor*, 2009 WL 4268457, at *5.

In their supplemental brief, Plaintiffs state that "a formal claim having been denied by defendant *ab initio* is the real reason behind the missing proof of claim form." (Pl's Supp. Brief, at 2). Also, Plaintiffs argue that Defendants never questioned the missing proof of loss in the discovery process. (Id.). Although Plaintiffs do not specifically argue waiver and estoppel, waiver and estoppel has been rejected by courts. *See Suopys*, 404 F.3d at 809 (explaining that waiver and estoppel does not apply to the proof of loss requirement).

The Policy does not state that the proof of loss must be submitted in any specific form; it merely provides that the proof of loss must contain certain information. Here, Plaintiffs filed an

initial claim, but the Court does not know the contents of that claim. Plaintiffs filed a supplemental claim to Allstate dated January 4, 2013, the day after Allstate issued a payment of $70,967.76 pursuant to the initial inspection, explaining that their oil tank was not accounted for when the adjuster came to inspect the property, and that they needed money for the removal of the tank and the oil. (Ex. A, ¶¶ 11-13 to Vytell Cert.; Ex. B to Vytell Cert.). On January 17, 2013, Allstate advised Plaintiffs that the oil tank was not covered under the flood policy. (Ex. A, ¶ 14 to Vytell Cert.). Although Defendants cite to the May 16, 2013 FEMA bulletin to support the assertion that a proof of loss is necessary for the supplemental claim, that bulletin also states that, "[c]ommunication with the policyholder is the key: acknowledging, following up, and informing of unforeseen delays as soon as they are anticipated." (Ex. E to Vytell Cert.). Here, there was clearly communication with Plaintiffs following the supplemental claim, and there is no indication that Allstate ever alerted Plaintiffs of the need for a more formal proof of loss prior to or following their response stating that the oil tank was not covered. The Court will not grant summary judgment in favor of Defendants for this reason.

***

The Policy covers: "direct physical loss by or from flood to your insured property." (Policy, Art. I). The policy defines "direct physical loss by or from flood" as "loss or damage to insured property, directly caused by a flood," and "there must be evidence of physical changes to the property." Art II(B)(12). There is no claim here for removal of the underground oil tank. The claim is for the oil forced into the crawlspace within the building's enclosure. Section III, Property Covered, A. Coverage A- Building Property, of the Policy states:

> We insure against direct physical loss by or from flood to…
> 8. Items of property in a building enclosure below the lowest elevated floor…or in a basement, regardless of the zone. Coverage is limited to the following…

5

b. Clean-up

There is an exclusion related to "pollutants" that states: "We do not pay for the testing for or monitoring of pollutants unless required by law or ordinance." Art. III(D)(5). Pollutants are described as, "Substances that include, but are not limited to, any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste." Also, "waste" includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed." Art. II(B)(22).

Article IV provides for Property Not Covered:

> (8) Underground structures and equipment, including walls, septic tanks and septic systems;
> ....
> (10) Containers, including related equipment, such as, but not limited to, tanks containing gases or liquids.

Defendants asserts that the oil tank was "underground" and hidden underneath a "concrete pad" and "pool filtered system" on the property, which constituted a "container" containing liquid. Plaintiffs explain that none of these paragraphs mention oil in a crawl space or clean-up or removal of oil. However, the "Not Covered" section is irrelevant here. Plaintiffs are not seeking the cost to replace the oil container; the Plaintiffs are requesting damages caused to their Property because of a spill that happened to emanate from a container.

Defendants also argues that consequential damages are not covered. The SFIP only covers damages caused directly by or from flood. In *West v. Harris*, the Fifth Circuit explained that damages in a breach of contract action arising under an NFIA issued policy are "pecuniary in nature, not personal." Only "direct physical loss by or from flood" is covered. *Neuser v. Hocker*, 140 F. Supp. 2d 787, 791 (W.D. Mich 1999). The policy also excludes consequential and non-pecuniary losses in Article V(A):

6

> We only pay for direct physical loss by or from flood, which means that we do not pay you for:
> .....
> 7. Any other economic loss you suffer.

Policy, Article V(A). *See also, Ryan v. Selective Ins. Co. of America*, 2014 WL 2872089 (D.N.J. June 23, 2014) ("consequential or incidental damages are, however, excluded" under SFIP). According to Defendants, the oil tank concealed underground is not covered under Articles IV (8) and (10), and damages from non-covered items are excluded as consequential.

The Court finds that some of the damage suffered by Plaintiffs is covered by the terms of the insurance policy. It appears that the damages do relate to "direct physical loss by or from flood," and some of the injury is to the Property, not to the surrounding land. Insurance policies, when ambiguous, should be interpreted in favor of the insured, and exclusions are to be interpreted narrowly. *See Elizabethtown Water Co. v. Hartford Cas., Ins. Co.*, 998 F. Supp. 447, 456 (D.N.J. 1998). Also, it does not appear that these damages are consequential. The damages are directly related to damage to the Property from the flood.

However, there is an exclusion to coverage for "cost associated with enforcement of any ordinance or law that requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants." Policy, Art. III(D)(5)(b). "Pollutants" is defined as:

> Substances that include, but are not limited to, any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed.

Policy, Art. II(22). It appears as though the section of Plaintiffs' damages seeking recovery for testing of the interior soil to comply with local law would be excluded.

Defendants also contend that there can be no recovery for any damage regarding the sand in the crawlspace because the SFIP does not pay for land. See Art. IV. That section also states: that the SFIP does not cover, "[t]hose portions of walks, walkways, decks, driveways, patios and other surfaces…located outside the perimeter, exterior walls of the insured building." Art. IV(9). The Third Circuit has held, "In sum, we conclude that…land is not insured under the SFIP, and that the SFIP thus does not cover costs the [plaintiffs] incurred in removing debris not owned by them from their land outside their home." *Torre v. Liberty Mut. Fire Ins. Co.*, 781 F.3d 651, 655 (3d Cir. 2015). However, the Court is not convinced that the crawlspace constitutes "land" that is "outside the home." In the Court's view, a crawlspace would be located within the perimeter of a building, and is therefore covered under the policy.

Defendants also note that there is no evidence that the rat slab was damaged by the flood. According to Defendants, Plaintiffs cannot establish that the rat slab was present at the time of the loss. Such an upgrade is not payable, according to Defendants. Plaintiffs have not disputed this claim. Since there is no evidence that the rat slab was damaged, this claim is denied.

Similarly, Defendants claim that there is no evidence that the floor joists were damaged by the flood. Defendants agree that floor joists could be covered under the Policy, but they assert that they already cleaned the floor joists and applied a microbial agent. (See Ex. A, Jeremy Mates Affidavit). In their briefs, Plaintiffs do not explain why the cleaning of the joists is insufficient or why replacement would be required under the Policy. Therefore, replacement of the floor joists is denied.

Finally, Defendants claim that attorney's fees and interest are barred because Case Management Order No. 1 dismissed all state law claims, including claims for attorney's fees. See Docket No. 10, Section 3(a)(ii); *see also Linblad v. Nationwide Mut. Ins. Co.*, 2014 WL

6895775, at *6 (D.N.J. Dec. 4, 2014). The Court agrees that attorney's fees are barred. Also, neither pre-judgment interest nor post-judgment interest is permitted for SFIP claims, according to Defendants. *See Ravasio v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 81 F. Supp. 3d. 274, 280 (E.D.N.Y. 2015); *Newton v. Capital Assur. Co., Inc.* 245 F.3d 1306 (11th Cir. 2001); see also *Studio Frames Ltd. v. The Standard Fire Ins. Co.*, 483 F.3d 239, 252-53 (4th Cir. 2007). The authority appears to support Defendants' position, and Plaintiffs may not recover interest, either.

## ORDER

Upon consideration of Plaintiffs' Motion for Summary Judgment, and Defendants' Motion for Summary Judgment, opposition thereto, any reply, and supplemental briefs; for the reasons stated herein, and for good cause shown;

IT IS, on this ___ day of June, 2016, hereby

**ORDERED** that Defendants' Motion for Summary Judgment [ECF No. 18] is GRANTED IN PART and DENIED IN PART; and it is further

**ORDERED** that Plaintiffs' Motion for Summary Judgment [ECF No. 17] is GRANTED IN PART and DENIED IN PART; it is further

**ORDERED** that Plaintiffs' request for the removal and replacement of sand under the crawlspace is GRANTED; it is further

**ORDERED** that Plaintiffs' requests for payment for testing of the interior soil, installation of the rat-slab and replacement of the oil-soaked joists are DENIED; it is further

**ORDERED** that Plaintiffs' requests for attorney's fees and interest are DENIED.

_____
PETER G. SHERIDAN, U.S.D.J.